UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

HENRY DARNELL TALLEY, )
Plaintiff, )
VS. ) No. 20-1118-JDT-cgc
OFFICER MCKINNEY, ET AL., )
Defendants. )

ORDER DISMISSING COMPLAINT AND GRANTING LEAVE TO AMEND

On June 1, 2020, Plaintiff Henry Darnell Talley, an inmate in the custody of the Tennessee Department of Correction (TDOC) who is currently confined at the Northeast Correctional Complex in Mountain City, Tennessee, filed a *pro se* civil complaint and a motion to proceed *in forma pauperis*. (ECF Nos. 1 & 2.) The Court granted him pauper status and assessed the civil filing fee pursuant to the Prison Litigation Reform Act, 28 U.S.C. §§ 1915(a)-(b). (ECF No. 4.) The complaint arises from events during Talley's previous incarceration at the Whiteville Correctional Facility (WCF) in Whiteville, Tennessee. He asserts claims for failure to protect, deprivation of medical care, excessive force, violation of institutional policies, and verbal harassment. (ECF No. 1 at PageID 3-8.) Talley sues the following Defendants: Correctional Officer First Name Unknown (FNU) McKinney; Lieutenant FNU Needham; Lieutenant FNU Shorter; former WCF

Warden Arvil Chapman;[1] and CoreCivic, a private company which manages the WCF.[2] (*Id.* at PageID 1.)[3]

Talley alleges a fight broke out on June 13, 2019, inside the I2 Unit sally port, which connects pods ID, IE, and IF. (*Id.* at PageID 3.) At the time, Officer McKinney was on duty in the control booth or "bubble", from which all doors in the I2 pods were controlled; McKinney knew a code had been called, summoning other officers to the scene of the altercation. (*Id.*) Several individuals, including Talley and some other inmates, already were inside the sally port. (*Id.*) Talley states that "[w]hen the sally port main door into the hallway" opened and others moved into the sally port, an inmate named Mel from another unit also entered and began to "hit and assault" Talley. (*Id.*) McKinney allegedly watched from the control booth and knew other inmates from IF pod were "knocking and beating on the door and window," yelling for him to "open the door man!" because they "wanted to get out of IF pod to attack [Talley]." (*Id.*) Talley states this was because "they noticed that it was a member of their gang fighting." (*Id.*) McKinney, who controlled the doors,

---

[1] The current Warden at the WCF is Sammy Rogers. *See* www.tn.gov/correction/sp/state-prison-list/whiteville-correctional-facility.html.

[2] Though it is part of the TDOC system, "Whiteville Correctional Facility is . . . managed by CoreCivic, a private corrections management firm." *See* www.tn.gov/correction/sp-state-prison-list/whiteville-correctional-facility.html. Talley refers to the WCF as "CoreCivic Whiteville Correctional Facility" (ECF No. 1 at PageID 1), and all claims against the WCF must be treated as claims against CoreCivic itself. Talley also names Corrections Corporation of America (CCA), which is merely the former name of CoreCivic. *See* www.corecivic.com/news/corrections-corporation-of-america-rebrands-as-corecivic (Oct. 28, 2016).

[3] Talley includes "et al." in the caption of the complaint, but he names no other defendants. The Court will not speculate as to any other individual or entity he may intend to sue.

then allegedly allowed an inmate named Veeno "out [of] IF pod door" "to enter the fight." (*Id*. at PageID 3, 4.) Veeno stabbed Talley in his right arm, and Mel stabbed Talley's left arm. (*Id*. at PageID 4.) Talley contends that in failing to follow procedure to keep the area locked down and secure during the brawl, McKinney "acted with evil intent and knew that it was a risk to my safety." (*Id*.) He asserts McKinney "placed me in a situation that exposed me to serious harm," "showed reckless disregard to my safety through his actions," and "encouraged the attack." (*Id*.) Talley was treated at both the WCF medical department and an outside hospital. (*Id*. at PageID 6.) He continues to experience bodily pain from the assault. (*Id*.)

Lieutenants Needham and Shorter responded to the code called about the fight as Talley, bleeding from his injuries, ran out of the area yelling "help, they stuck me." (ECF No.1 at PageID 5.) An unidentified officer helped Talley "put something over [his] wound" and Nurse Bobbitt volunteered to treat him. (*Id.*) Needham and Shorter, however, commanded Talley to place his hands behind his back to be handcuffed, threatening to deploy a chemical agent when he "took [too] long" to obey. (*Id*.) Talley contends they "showed deliberate indifference to [his] serious medical need" when they "denied and delayed" immediate treatment. (*Id.*)

Talley further alleges Needham used excessive force "by escorting Plaintiff [from the fight scene] with her hand upon the back of my neck in a very aggressive manner." (*Id.* at PageID 6.) He states it was "unnecessary" for Needham to put her hands on his neck and "shove" him up the hallway because he was compliant with her orders and because

"correctional officers usually place their hands on [inmates'] handcuffs or shoulders." (*Id.*) She also was verbally abusive, saying to him, "you deserve to get stabbed, shut up!" (*Id.*)

Talley contends former Warden Chapman violated CoreCivic Policies 14-4.4(F) and (L). (*Id.* at PageID 7.) According to Talley, Policy 14-4.4(F) imposes a duty to protect inmates from "personal injury and abuse, verbal abuse, . . . disease, corporal punishment, property damages, and harassment." (*Id.*) He states Policy 14-4.4(L) requires that all inmates "be supervised and under the control of trained staff or trained volunteers at all times. In no case will an inmate/resident be given power of authority over another inmate." (*Id.*) Talley alleges it is "normal [at the WCF] for officers to give 'power and authority' to other inmates, over other inmates" because the facility is understaffed. (*Id.* at PageID 7-8.) He alleges the Defendants' failure to follow these policies resulted in the violation of his rights. (*Id.*) He also makes the conclusory statement that Chapman and "higher up CoreCivic officials" failed to train or supervise their employees, rendering CoreCivic responsible for the policy violations of those employees. (*Id.* at PageID 8.)

Talley grieved the incident concerning the fight but states he was denied a "normal hearing while in segregation." (*Id.*) The grievance was deemed inappropriate because it was filed more than seven days after the occurrence; he appealed, and the grievance was denied at all levels. (ECF No. 1-1 at PageID 12-20; *see also* ECF No. 1 at PageID 8.)

Talley seeks both compensatory and punitive damages. (*Id.* at PageID 9.)

The Court is required to screen prisoner complaints and to dismiss any complaint, or any portion thereof, if the complaint —

> (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
>
> (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b); *see also* 28 U.S.C. § 1915(e)(2)(B).

In assessing whether the complaint in this case states a claim on which relief may be granted, the Court applies the standards of Fed. R. Civ. P. 12(b)(6), as stated in *Ashcroft v. Iqbal*, 556 U.S. 662, 677-79 (2009) and in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007). *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010). The Court accepts a plaintiff's "well-pleaded" factual allegations as true and then determines whether the allegations "'plausibly suggest an entitlement to relief.'" *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 681). Conclusory allegations "are not entitled to the assumption of truth," and legal conclusions "must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. Although a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), Rule 8 nevertheless requires factual allegations to make a "'showing,' rather than a blanket assertion, of entitlement to relief." *Twombly*, 550 U.S. at 555 n.3.

"*Pro se* complaints are to be held 'to less stringent standards than formal pleadings drafted by lawyers,' and should therefore be liberally construed." *Williams*, 631 F.3d at 383 (quoting *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004)). *Pro se* litigants, however, are not exempt from the requirements of the Federal Rules of Civil Procedure. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *see also Brown v. Matauszak*, 415 F. App'x 608, 612, 613 (6th Cir. Jan. 31, 2011) (affirming dismissal of *pro*

*se* complaint for failure to comply with "unique pleading requirements" and stating "a court cannot 'create a claim which [a plaintiff] has not spelled out in his pleading'" (quoting *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975))).

Talley filed his complaint pursuant to 42 U.S.C. § 1983, which provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

To state a claim under § 1983, a plaintiff must allege two elements: (1) a deprivation of rights secured by the "Constitution and laws" of the United States (2) committed by a defendant acting under color of state law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970).

*Claims Against CoreCivic and Official Capacity Claims*: Talley does not state a claim against CoreCivic or against the WCF Defendants in their official capacities.[4] "A private corporation that performs the traditional state function of operating a prison acts under color of state law for purposes of § 1983." *Thomas v. Coble*, 55 F. App'x 748, 748 (6th Cir. 2003) (citing *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996)). The Sixth Circuit has applied the standards for assessing municipal liability to claims against private corporations that operate prisons or that provide medical care or food

[4] Claims against the WCF Defendants in their official capacities are treated as claims against their employer, CoreCivic.

services to prisoners. *Id.* at 748-49; *Street*, 102 F.3d at 817-18; *Johnson v. Corr. Corp. of Am.*, 26 F. App'x 386, 388 (6th Cir. 2001); *see also Eads v. State of Tenn.*, No. 1:18-cv-00042, 2018 WL 4283030, at *9 (M.D. Tenn. Sept. 7, 2018). CoreCivic "cannot be held liable under a theory of respondeat superior." *Braswell v. Corr. Corp. of Am.*, 419 F. App'x 622, 627 (6th Cir. 2011). To prevail on a § 1983 claim against CoreCivic, Talley "must show that a policy or well-settled custom of the company was the 'moving force' behind the alleged deprivation" of his rights. *Id.*

Talley does not allege the Defendants deprived him of constitutional rights based on an unconstitutional policy or custom of CoreCivic. He alleges the employee Defendants violated legitimate prison policies but does not allege the policies themselves were behind any violation of his rights. Moreover, the bare allegation that former Warden Chapman and "higher up CoreCivic officials" failed to train their subordinates is not enough to state a claim that CoreCivic has a policy or custom of failure to train.

*Claims for Violation of CoreCivic Policies*: Talley also has not stated a § 1983 claim against Defendant Chapman for violating legitimate prison policies. An inmate's allegation that jail officials failed to follow a correctional facility's administrative policies does not, in and of itself, rise to the level of a constitutional violation. *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007). After *Sandin v. Conner*, 515 U.S. 472, 484 (1995), it is even clearer that mandatory language in prison regulations does not create a liberty interest protected by the Due Process Clause. *See Rienholtz v. Campbell*, 64 F. Supp. 2d 721, 729-30 (W.D. Tenn.), *aff'd*, 198 F.3d 247 (6th Cir. 1999) (citing *Rimmer-Bey v. Brown*, 62 F.3d 789, 790-71 (6th Cir. 1995)). Even if the policies in question ultimately

are mandated by the TDOC as well as by CoreCivic, § 1983 does not provide a remedy for violations of state laws or regulations. *Lewellen v. Metro. Gov't of Nashville and Davidson Cnty.*, 34 F.3d 345, 347 (6th Cir. 1994). *See also Storm v. Swiger*, No. 4:07 CV 2387, 2007 WL 3171491, at *3 (N.D. Ohio Oct. 29, 2007) (the violation of a prison regulation is not actionable under § 1983) (citing *Levine v. Torvik*, 986 F.2d 1506, 1515 (6th Cir. 1993), *overruled in part on other grounds by Thompson v. Keohane*, 516 U.S. 99, 111 (1995)). Accordingly, Talley does not have a constitutional right to Chapman's observance of prison policies.

*Claim for Failure to Protect*: The Eighth Amendment protects prisoners from "cruel and unusual punishment," *Farmer v. Brennan*, 511 U.S. 825, 832 (1994), including the right to be free "from violence at the hands of other prisoners." *Bishop v. Hackel*, 636 F.3d 757, 766 (6th Cir. 2011) (quoting *Farmer*, 511 U.S. at 833); *see also Wilson v. Yaklich*, 148 F.3d 596, 600 (6th Cir. 1998) (explaining that the Eighth Amendment imposes on prison officials "an affirmative duty to protect inmates from violence perpetrated by other prisoners"). Accordingly, the Constitution requires prison officials to "take reasonable measures to guarantee the safety of the inmates." *Farmer*, 511 U.S. at 832 (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)).

A failure-to-protect claim has objective and subjective components. For the objective prong, a plaintiff must demonstrate that "he is incarcerated under conditions posing a substantial risk of serious harm." *Bishop*, 636 F.3d at 766 (quoting *Farmer*, 511 U.S. at 833). For the subjective prong, a plaintiff must allege that a prison official "acted with 'deliberate indifference' to inmate health or safety," *id.* (quoting *Farmer*, 511 U.S. at

834), meaning the official "kn[ew] of and disregard[ed]" the excessive risk of harm. *Id*. at 766-67 (quoting *Farmer*, 511 U.S. at 837); *see also Richko v. Wayne Cnty.*, 819 F.3d 907, 915 (6th Cir. 2016) (citing *Rouster v. Cnty. of Saginaw*, 749 F.3d 437, 446 (6th Cir. 2014)). It is not enough that the official "should have perceived" a significant risk, "but did not." *Farmer*, 511 U.S. at 838. An official's state of mind must be "more blameworthy than negligence" before liability will attach. *Woods v. Lecureux*, 110 F.3d 1215, 1222 (6th Cir. 1997) (quoting *Farmer*, 511 U.S. at 835). In analyzing the subjective component, courts must consider each defendant's knowledge individually. *See Bishop*, 636 F.3d at 767 (citing *Phillips v. Roane Cnty.*, 534 F.3d 531, 542 (6th Cir. 2008) and *Garretson v. City of Madison Heights*, 407 F.3d 789, 797 (6th Cir. 2005)).

Being attacked in prison, such as Talley experienced here, is not "part of the penalty that criminal offenders pay for their offenses against society." *Farmer*, 511 U.S. at 834 (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). Talley thus has sufficiently alleged the objective prong of an Eighth Amendment claim of failure to protect.

As for the subjective prong, the complaint alleges McKinney acted with deliberate indifference to Talley's safety when he failed to comply with established prison procedures to secure the area where the fight was occurring, thus allowing inmates Mel and Veeno into the sally port where they attacked Talley. (ECF No. 1 at PageID 3-4.) Talley also seems to imply McKinney may have intentionally allowed Mel and Veeno into the sally port to carry out the attack, based on his belief that McKinney knew Mel and Veeno were part of the same gang and that both McKinney and Veeno are from Memphis, Tennessee. (*Id.* at PageID 4.)

Talley's factual allegations do not support his claim that McKinney subjectively knew of, and yet deliberately disregarded, a significant risk that Talley would be injured in a gang fight. Although McKinney allegedly knew the fight was happening because he could see it from the control booth (*id*. at PageID 3), Talley does not allege McKinney knew Mel and Veeno would attack Talley in particular. It is not a plausible inference that McKinney intentionally failed to secure the area in allegiance to Mel and Veeno because of their gang affiliation and/or because McKinney and Veeno share the same hometown. (ECF No. 1 at PageID 4.)[5] Moreover, the Court is not in the position to second-guess the split-second judgment calls of correctional officers on the rapidly-evolving, fast-paced, and emotionally-charged scene of an inmate altercation.[6]

The complaint does not plausibly allege that McKinney knew of, encouraged, or turned a blind eye to the risk Talley would be injured in the gang fight. Talley's failure to protect allegations against McKinney therefore do not state a claim for relief.

*Eighth Amendment Claims for Denial of Medical Care*: The Court also reviews claims regarding the denial of medical care under the Eighth Amendment. Under *Estelle v. Gamble*, 429 U.S. 97, 104 (1976), "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain" . . . proscribed by the

---

[5] If taken to its illogical conclusion, Talley's invitation to infer a "culpable state of mind" of deliberate indifference whenever corrections officers and inmates come from the same city would vitiate the Eighth Amendment's subjective prong. The Court does not accept Talley's invitation to do so.

[6] *See*, *e.g.*, *Graham v. Connor*, 490 U.S. 386, 396 (1989) (noting, in the Fourth Amendment context, that "officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving . . .").

Eighth Amendment." However, not "every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Id.* at 105. To state a cognizable claim, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Id.* at 106.

The objective component of an Eighth Amendment medical care claim requires that a prisoner have a serious medical need. *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004); *Brooks v. Celeste*, 39 F.3d 125, 128 (6th Cir. 1994). "[A] medical need is objectively serious if it is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would readily recognize the necessity for a doctor's attention.'" *Blackmore*, 390 F.3d at 897; *see also Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005). The subjective component again requires that jail officials have a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834; *see also Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991) (plaintiffs must show officials' "deliberate indifference" to a substantial risk of serious harm); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 550 (6th Cir. 2009). Prison officials violate the Eighth Amendment when they subjectively know of an excessive risk of harm to an inmate's health or safety and disregard it. *Farmer*, 511 U.S. at 837.

Stab wounds sustained during a prison altercation is arguably a serious medical need for purposes of the Eighth Amendment's objective prong. However, Talley does not sufficiently allege that Needham and Shorter acted with unconstitutional "deliberate indifference" to that medical need. Rather, the circumstances outlined in Talley's complaint portray a fast-paced situation that was dangerous to WCF staff and inmates. The

complaint indicates that Needham and Shorter chose to first bring the circumstances under control by subduing the brawl participants instead of immediately addressing their injuries.

Talley does not allege that handcuffing those who participated in the brawl was itself unreasonable. Rather, he contends treatment of his injuries should have taken precedence over restoring order. Under the specific circumstances described in the complaint, however, the choice made by Needham and Shorter does not suggest a culpable state of mind. Talley admits another WCF officer had given him something with which to cover his wounds when Needham and Shorter arrived on the scene (ECF No. 1 at PageID 5), and he does not allege the delay in medical care exacerbated his injuries or caused him to need more serious and extensive treatment. Again, as explained *supra*, this Court is not in a position to second-guess the split-second safety determinations made by correctional officers trying to quell inmate violence. With the number of participants such as Talley describes (*see id*. at PageID 3-5), the circumstances surrounding the fight seemed to warrant establishment of order first.

Having failed to meet the Eighth Amendment's subjective prong, Talley has not stated a claim for deprivation of medical care.

*Claim of Excessive Force*: Talley has alleged Defendant Needham subjected him to excessive force when she escorted him from the scene with her hand on the back of his neck "in a very aggressive manner" and shoved him up the hallway, which he alleges was "unnecessary." (*Id.* at PageID 8.)

The Eighth Amendment protects a convicted inmate from cruel and unusual punishments, including "the unnecessary and wanton infliction of pain." *See Hudson v.*

*McMillian*, 503 U.S. 1, 5 (1992) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)); *Wilson*, 501 U.S. 294. Establishing an Eighth Amendment claim of excessive force requires a showing that (1) "the alleged wrongdoing was objectively 'harmful enough' to establish a constitutional violation," and (2) "the officials act[ed] with a sufficiently culpable state of mind." *Hudson*, 503 U.S. at 8 (quoting *Wilson*, 501 U.S. at 298, 303). The "core judicial inquiry" is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id.* at 6 (citing *Whitley*, 475 U.S. at 320-21).

In *Hudson*, the Supreme Court held that a significant physical injury is not required to establish the objective component of an Eighth Amendment claim. 503 U.S. at 7-9. However, the Supreme Court made clear that every physical contact does not violate the Eighth Amendment:

> That is not to say that every malevolent touch by a prison guard gives rise to a federal cause of action. *See Johnson v. Glick*, 481 F.2d [1028,] 1033 [(2d Cir. 1973)] ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chamber, violates a prisoner's constitutional rights"). The Eighth Amendment's prohibition of "cruel and unusual" punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort "'repugnant to the conscience of mankind.'" *Whitley*, 475 U.S. [at 327] (quoting *Estelle*, *supra*, 429 U.S. [at 106]) (internal quotation marks omitted).

*Id.* at 9-10. The Supreme Court re-emphasized in *Wilkins v. Gaddy*, 559 U.S. 34 (2010), that claims of excessive force do not require any particular quantum of injury, and the extent of injury is only one factor bearing on whether the use of force was necessary in a particular situation. *Id.* at 37. The Court stated, "[i]njury and force, however, are only

imperfectly correlated, and it is the latter that ultimately counts. An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." *Id.* at 38.

Here, Talley's complaint suggests there was a legitimate penological basis for Needham's conduct. His factual allegations describe an ongoing violent situation that threatened the safety of both inmates and staff at the WCF. The plausible inference is that removing inmates involved in the fight was an effort to diffuse the situation and restore order. Under those circumstances, Needham's conduct in placing her hand on Talley's neck to escort him from the scene after the brawl is not objectively harmful when measured by contemporary standards of decency. *See*, *e.g.*, *Henthorn v. Hester,* No. 94-5090, 1995 WL 299031, *2 (6th Cir. May 16, 1995). Nothing in the complaint suggests that Needham acted solely for the purpose of causing harm. Though Talley characterizes her actions as "aggressive" and "unnecessary" (ECF No. 1 at PageID 6), his factual allegations do not sufficiently plead malicious and sadistic intent for Eighth Amendment purposes. Rather, since the fight had just ended, the inference is that Needham placed her hand on Talley's neck to further control him and direct him up the hallway in a "good faith effort to maintain and restore discipline." *See Hudson*, 503 U.S. at 6, 9. Good faith in the use of physical force for a valid penological objective will rarely, if ever, violate the Eighth Amendment. *See Whitley*, 475 U.S. at 319-20. Moreover, Talley does not allege he was actually injured in any way by Needham's conduct, suggesting that any harm was *de minimis*.

The totality of circumstances alleged by Talley insufficiently states an Eighth Amendment claim against Needham for excessive force.

*Claim of Inadequate Grievance Procedure*: To the extent Talley is alleging the grievance procedure at the WCF is inadequate (*see* ECF No. 1 at PageID 8), he does not state a claim. Prisoners do not possess a constitutional right to a prison grievance procedure. *See Young v. Gundy*, 30 F. App'x 568, 569-70 (6th Cir. 2002); *LaFlame v. Montgomery Cnty. Sheriff's Dep't*, 3 F. App'x 346, 348 (6th Cir. 2001) (holding that plaintiff's allegation that jail staff ignored the grievances he filed did not state a § 1983 claim "because there is no inherent constitutional right to an effective prison grievance procedure").

For all of the foregoing reasons, Talley's complaint fails to state a claim on which relief may be granted and is subject to dismissal.

*Opportunity to Amend Complaint*: The Sixth Circuit has held that a district court may allow a prisoner to amend his complaint to avoid a *sua sponte* dismissal under the PLRA. *LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013); *see also Brown v. R.I.*, 511 F. App'x 4, 5 (1st Cir. 2013) (per curiam) ("Ordinarily, before dismissal for failure to state a claim is ordered, some form of notice and an opportunity to cure the deficiencies in the complaint must be afforded."). Leave to amend is not required where a deficiency cannot be cured. *Curley v. Perry*, 246 F.3d 1278, 1284 (10th Cir. 2001) ("We agree with the majority view that sua sponte dismissal of a meritless complaint that cannot be salvaged by amendment comports with due process and does not infringe the right of access to the courts."). In this case, the Court finds Talley should be given the opportunity to amend his complaint.

*Conclusion*: In conclusion, the Court DISMISSES Talley's complaint for failure to state a claim on which relief can be granted, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A (b)(1). Leave to amend, however, is GRANTED.

Any amended complaint must be filed within twenty-one days after the date of this order, **on or before April 26, 2021**. Talley is advised that an amended complaint will replace the original complaint and must be complete in itself without reference to the prior pleading. The amended complaint must be signed, and the text of the amended complaint must allege sufficient facts to support each claim without reference to any extraneous document. All claims alleged in an amended complaint must arise from the facts alleged in the original complaint. Each claim for relief must be stated in a separate count and must identify each Defendant sued in that count. If Talley fails to file an amended complaint within the time specified, the Court will dismiss the case with prejudice in its entirety, assess a strike pursuant to 28 U.S.C. § 1915(g), and enter judgment.

IT IS SO ORDERED.

s/ **James D. Todd**
JAMES D. TODD
UNITED STATES DISTRICT JUDGE